IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:24-cv-80790-DMM

HIPPOCRATES HEALTH INSTITUTE, INC., SUSAN WYATT, SHENA D. FORLASTRO, EILEEN HOUGHTON, JENNIFER HOUGHTON, RYAN HOUGHTON, SANDRA LILLEY, KEVIN T. HOLMES, as representative of JOYCE HOLMES, CAROL MARCHESE, individually and as personal representative of the Estate of THEODORE A. VESAKI, THOMAS MARCHESE, KEVIN LENNY, GEORGE SWAIN, GRACE A. SWAIN, DR. FRANK J. CIALA, DEBRA CIALA, HERMINE SIPPIE, CARISSA MILEY, ELEANOR WHITE, BARBARA JOHNSON, WILLIAM SHERA, JEAN SHERA, HARRY WATSON, NANCY WATSON, PATRICIA CONTI, BERNARD CARLIN, TINA OKOMSKI, PATRICIA KOHLER, JULIUS LODGEK, SANDRA H. PRITCHARD, DIAN BENEVENTO, MARYELLEN CATANI, JANICE BRETT, DONNA EWANICHAK, RICHARD A. WEBB, KENNETH WEBB, JR., WILLIAM GRAHAM, PATRICIA GRAHAM, VIRGINIA STOJANOV, KATHLEEN BICZEL, FRANK ZABROSKI, AMELIA ZABROSKI, WENDY E. HARRIS, EDWARD WESTON, CARMINE DECINQUE, DAVID B. MELCHIORRE, LINDA V. MELCHIORRE, PATRICIA HODSON, CANDICE C. CUSICK, THOMAS A. D'ANTONIO, MARIA D'ANTONIO, DR. COLIN A. CAMPBELL, JANICE I. CAVALLARO, PAUL C. CAVALLARO, ROBERT J. STEFANO, MICHAEL J. STEFANO, DANIEL DEEN, CONSTANCE DEEN, JEAN FULTON, REGINA B. FULTON, JAMES GRAZIOLI, KAREN GRAZIOLI, STEPHEN GRAZIOLI, DIANA JONES, CHARLES B. SHAUD, JAMES WOOLSLAYER, ETHEL WOOLSLAYER, and KRISTINE KEPPOL,

Plaintiffs,

v.

PRINCIPAL FINANCIAL GROUP, INC. and
BANK OF AMERICA, NATIONAL
ASSOCIATION,

Defendants.

---

**FIRST AMENDED COMPLAINT**

Plaintiffs Hippocrates Health Institute, Inc. ("Hippocrates"), Susan Wyatt, Shena D. Forlastro, Eileen Houghton, Jennifer Houghton, Ryan Houghton, Sandra Lilley, Kevin T. Holmes, as representative of Joyce Holmes, Carol Marchese, individually and as personal representative of the State of Theodore A. Vesaki, Thomas Marchese, Kevin Lenny, George Swain, Grace A. Swain, Dr. Frank J. Ciala, Debra Ciala, Hermine Sippie, Carissa Miley, Eleanor White, Barbara Johnson, William Shera, Jean Shera, Harry Watson, Nancy Watson, Patricia Conti, Bernard Carlin, Tina Okomski, Patricia Kohler, Julius Lodgek, Sandra H. Pritchard, Dian Benevento, MaryEllen Catani, Janice Brett, Donna Ewanichak, Richard A. Webb, Kenneth Webb, Jr., William Graham, Patricia Graham, Virginia Stojanov, Kathleen Biczel, Frank Zabroski, Amelia Zabroski, Wendy E. Harris, Edward Weston, Carmine Decinque, David B. Melchiorre, Linda V. Melchiorre, Patricia Hodson, Candice C. Cusick, Thomas A. D'Antonio, Maria D'Antonio, Dr. Colin A. Campbell, Janice I. Cavallaro, Paul C. Cavallaro, Robert J. Stefano, Michael J. Stefano, Daniel Deen, Constance Deen, Jean Fulton, Regina B. Fulton, James Grazioli, Karen Grazioli, Stephen Grazioli, Diana Jones, Charles B. Shaud, James Woolslayer, Ethel Woolslayer, and Kristine Keppol (collectively, the "Plaintiffs")[1] sue defendants Principal Financial Group, Inc. ("Principal Financial") and Bank of

---

[1] Plaintiffs expect that additional victims of the Ponzi scheme at issue will come forward and that future amendment(s) of the Complaint will be necessary to add such victims as co-plaintiffs to this lawsuit.


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

America, National Association ("Bank of America") (collectively, the "Defendants"), and allege the following:

## INTRODUCTION

1. Plaintiffs are each persons or entities who are victims of a Ponzi scheme orchestrated by The Straub Group Insurance & Financial Services, LLC ("The Straub Group") and Thomas G. Straub ("Thomas").

2. For more than a decade, The Straub Group and Thomas solicited investment monies from Plaintiffs and likely dozens (if not hundreds) of unsuspecting victims.

3. During this time, The Straub Group and Thomas received more than $15 million in monies from innocent investors who were promised that their monies would be placed in a 'suspense' account where such person would earn a guaranteed amount of interest (usually between 3% - 6% annually) while awaiting a good investment opportunity.

4. The 'suspense' account was an ordinary Bank of America checking account (*3392) (the "Suspense Account") opened in the name of The Straub Group in March 2005.

5. The investment monies deposited into the Suspense Account did not earn interest as promised and were never used for anything other than to line the pockets of The Straub Group, Thomas, and/or their co-conspirators.

6. Although The Straub Group and Thomas provided Plaintiffs and other investors with annual and/or monthly statements purporting to show their monies earning interest, this was all just smoke and mirrors. The Straub Group and Thomas regularly raided the Suspense Account, transferring over $6 million to their other business and/or personal Bank of America accounts and millions more to various other third parties.

7. The Straub Group and Thomas performed hundreds (if not thousands) of deposits

into and withdrawals from the Suspense Account over at least a 10-year period… yet Bank of America not once questioned the legitimacy of such transactions (many of which exceeded $100,000.00) or attempted to comply with various Know Your Customer (KYC) guidelines and regulations that would have revealed the illegal scheme being run by The Straub Group and Thomas.

8. Bank of America, however, is not alone in its wholesale lack of oversight over The Straub Group and Thomas. Indeed, Thomas was a senior agent and employee of Principal Financial who sold millions of dollars of life and other insurance policies to the substantial bulk of the Plaintiffs and the other victims of The Straub Group and his Ponzi scheme.

9. As set forth herein, Principal Financial provided the means for The Straub Group and Thomas to succeed in their scheme. Principal Financial paid for The Straub Group's offices in Marlton, New Jersey. It hired receptionists who answered calls from investors seeking information on their monies in the Suspense Account and transferred such calls to Thomas/his staff (even though Principal Financial was well aware that Thomas was not licensed as an investment advisor).

10. Although Thomas had multiple 'supervisors' from Principal Financial, he testified under oath in a May 9, 2024 deposition that Principal Financial left him on his own and was never in actuality supervised – nobody from Principal Financial questioned the substantial investment activities he was engaging in from his Principal Financial office in Marlton, New Jersey or otherwise acted to supervise him in any manner.

11. This lawsuit thus asserts claims against both Bank of America and Principal Financial arising from their role in and wholesale failures to stop a Ponzi scheme for 10+ years that, upon information and belief, has resulted in the losses of more than $10 million.

## THE PARTIES

***The Plaintiffs***

12. Plaintiffs are each persons or entities who were induced into providing monies to The Straub Group and Thomas for deposit into the Suspense Account. It is Plaintiffs' intent to pursue through this action only such claims as they own directly.

13. Specifically, Plaintiff are as follows:

a. Hippocrates is a nonprofit corporation organized and existing under the laws of the State of Florida with its principal place of business located in Palm Beach County, Florida. From its 55-acre facility in West Palm Beach, Hippocrates caters to guests from all over the world who benefit from health and nutritional counseling, non-invasive remedial and youth-enhancing therapies, state of the art spa services, inspiring talks on life principles and a daily buffet of enzyme-rich, organic meals. Hippocrates was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of its Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$6,536,712.42***.

b. Susan Wyatt is an individual who is a citizen of the State of Florida residing in the State of Florida. Susan Wyatt was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$242,520.30***.

c. Shena D. Forlastro is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Shena D. Forlastro was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$29,046.69***.

d. Eileen Houghton is an individual who is a citizen of the State of Virginia residing in the State of Virginia. Eileen Houghton was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$630,000.00***.

e. Jennifer Houghton is an individual who is a citizen of the State of Virginia residing in the State of Virginia. Jennifer Houghton was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$25,000.00***.

f. Ryan Houghton is an individual who is a citizen of the State of Virginia residing in the State of Virginia. Ryan Houghton was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$65,000.00***.

g. Sandra Lilley is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Shena D. Forlastro was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$350,000.00***.

h. Kevin T. Holmes, as representative of Joyce Holmes, is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Joyce Holmes (who is a citizen of the State of New Jersey residing in the State of New Jersey) is Kevin T. Holmes' mother and has executed a power of attorney authorizing to act on her behalf in this lawsuit. Joyce Holmes was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$192,107.29***.

i. Carol Marchese, individually and as personal representative of the Estate of Theodore A. Vesaki, is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Carol Marchese was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$158,000.00***. Carol Marchese is the personal representative of the Estate of Theodore A. Vesaki, who was an individual that was a citizen of the State of New Jersey who, prior to his death, resided in the State of New Jersey. Theodore A. Vesaki was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$172,860.90***.

j. Thomas Marchese is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Thomas Marchese was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$74,500.00***.

k. Kevin Lenny is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Kevin Lenny was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$20,000.00***.

l. George Swain and Grace Ann Swain are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. George Swain and Grace Ann Swain are a married couple. George Swain and Grace Ann Swain were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$347,046.18***.

m. Dr. Frank Ciala and Debra Ciala are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. Dr. Frank Ciala and Debra Ciala are a married couple. Dr. Frank Ciala and Debra Ciala were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$750,000.00***.

n. Hermine Sippie is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Hermine Sippie was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$200,000.00***.

o. Carissa Miley is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Carissa Miley was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense

Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$87,000.00***.

p. Eleanor White is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Eleanor White was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$331,000.00***.

q. Barbara Johnson is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Barbara Johnson was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$100,000.00***.

r. William Shera and Jean Shera are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. William Shera and Jean Shera are a married couple. William Shera and Jean Shera were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$75,000.00***.

s. Harry Watson and Nancy Watson are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. Harry Watson and Nancy Watson are a married couple. Harry Watson and Nancy Watson were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$54,091.46***.

t. Patricia Conti is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Patricia Conti was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$23,280.96***.

u. Bernard Carlin is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Bernard Carlin was lured by The Straub

Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$86,000.00***.

v. Tina Okomski is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Tina Okomski was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$100,000.00***.

w. Patricia Kohler is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Patricia Kohler was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$100,000.00***.

x. Julius Lodgek is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Julius Lodgek was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$382,490.03***.

y. Sandra H. Pritchard is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Sandra H. Pritchard was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$298,449.66***.

z. Dian Benevento is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Dian Benevento was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$100,000.00***.

aa. MaryEllen Catani is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. MaryEllen Catani was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub

Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$50,000.00***.

bb. Janice Brett is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Janice Brett was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$5,849.29***.

cc. Donna Ewanichak is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Donna Ewanichak was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$157,886.00***.

dd. Richard A. Webb is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Richard A. Webb was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$170,655.00***.

ee. Kenneth Webb, Jr. is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Kenneth Webb, Jr. was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$104,356.28***.

ff. William Graham and Patricia Graham are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. William Graham and Patricia Graham are a married couple. William Graham and Patricia Graham were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$36,457.50***.

gg. Virginia Stojanov is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Virginia Stojanov was lured by The Straub Group and Thomas into 'investing' substantial monies into the

Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***66,000.00***.

hh. Kathleen Biczel is an individual who is a citizen of the State of Florida residing in the State of Florida. Kathleen Biczel was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$115,500.00***.

ii. Frank Zabroski and Amelia Zabroski are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. Frank Zabroski and Amelia Zabroski are a married couple. Frank Zabroski and Amelia Zabroski were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$355,948.24***.

jj. Wendy E. Harris is an individual who is a citizen of the State of Florida residing in the State of Florida. Wendy E. Harris was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$60,554.54***.

kk. Edward Weston and Carmine Decinque are each individuals who are citizens of the State of Pennsylvania residing in the State of Pennsylvania. Edward Weston and Carmine Decinque are a married couple. Edward Weston and Carmine Decinque were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of approximately ***$200,000.00***.

ll. David B. Melchiorre and Linda V. Melchiorre are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. David B. Melchiorre and Linda V. Melchiorre are a married couple. David B. Melchiorre and Linda V. Melchiorre were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$30,632.09***.

mm. Patricia Hodson is an individual who is a citizen of the State of Pennsylvania residing in the State of Pennsylvania. Patricia Hodson was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of $***21,136.41***.

nn. Candice C. Cusick is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Candice C. Cusick was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$27,040.00***.

oo. Thomas A. D'Antonio and Maria D'Antonio are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. Thomas A. D'Antonio and Maria D'Antonio are a married couple. Thomas A. D'Antonio and Maria D'Antonio were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$44,482.16***.

pp. Dr. Colin A. Campbell is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Dr. Colin A. Campbell was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$60,381.80***.

qq. Janice I. Cavallaro and Paul C. Cavallaro are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. Janice I. Cavallaro and Paul C. Cavallaro are a married couple. Janice I. Cavallaro and Paul C. Cavallaro were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$60,850.59*** in Janice I. Cavallaro's individual Suspense account and ***$180,176.60*** in Janice I. Cavallaro and Paul C. Cavallaro's joint Suspense account.

rr. Robert J. Stefano and Michael J. Stefano are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. Robert J. Stefano and Michael J. Stefano are siblings. Robert J. Stefano and Michael J. Stefano's mother (Michaelina Stefano, who has now passed

away after which her Suspense account monies were transferred to Robert J. Stefano and Michael J. Stefano) was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***81,073.01***.

ss. Daniel Deen and Constance Deen are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. Daniel Deen and Constance Deen are a married couple. Daniel Deen and Constance Deen were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$75,834.38***.

tt. Jean Fulton and Regina B. Fulton are each individuals who are citizens of the State of Florida residing in the State of Florida. Jean Fulton and Regina B. Fulton are a married couple. Jean Fulton and Regina B. Fulton were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$10,701.32***.

uu. James Grazioli and Karen Grazioli are each individuals who are citizens of the State of New Jersey residing in the State of New Jersey. James Grazioli and Karen Grazioli are a married couple. James Grazioli and Karen Grazioli were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$24,026.50***.

vv. Stephen Grazioli is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Stephen Grazioli was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$24,335.05***.

ww. Diana Jones is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Diana Jones was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of

the Ponzi scheme described herein – to wit, a total of ***$24,335.05***.

xx. Charles B. Shaud is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Charles B. Shaud was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of his Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$39,928.98***.

yy. James Woolslayer and Ethel Woolslayer are each individuals who are citizens of the State of Pennsylvania residing in the State of Pennsylvania. James Woolslayer and Ethel Woolslayer are a married couple. James Woolslayer and Ethel Woolslayer were lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and have now lost all of their Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$48,195.84***.

zz. Kristine Keppol is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey. Kristine Keppol was lured by The Straub Group and Thomas into 'investing' substantial monies into the Suspense Account which were converted/misappropriated by The Straub Group and Thomas and has now lost all of her Suspense Account monies as a result of the Ponzi scheme described herein – to wit, a total of ***$7,577.89***.

***The Defendants***

14. Principal Financial is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 711 High Street, Des Moines, IA 50392. Principal Financial's agent for process of service is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

15. Bank of America is a national bank with its principal office located at 100 North Tryon Street, Charlotte, NC 28255. Bank of America's agent for service of process is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between

citizens of different states.

17. This Court has jurisdiction over Defendants pursuant to Fla. Stat. § 48.193 because they committed tortious acts in this state and caused injury to Plaintiffs within this state while Defendants were engaged in solicitation or service activities within this state.

18. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## BACKGROUND

19. The Straub Group, which is principally owned and managed by Thomas, purports to sell annuities, life insurance, long term care, and various other types of insurance to the general public.

20. At all times relevant hereto, The Straub Group maintained its principal place of business at 525 Rt. 73 North, Suite 301, Marlton, NJ 08053 (the "Straub Group Office").

21. Thomas is licensed as an "insurance producer" in several states including New Jersey, Alabama, Arizona, California, Delaware, Florida, Georgia, Maryland, Michigan, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia.

22. Thomas, however, is not licensed in any state as a financial advisor or otherwise authorized to invest monies on behalf of his clients/customers.

23. At all times relevant hereto, Thomas was employed by Principal Financial as a senior agent authorized to assist clients/customers with procuring life and other insurance products on Principal Financial's behalf.

24. In conjunction with his employment, Principal Financial itself leased the Straub Group Office for Thomas' use. Thus, even though the door of the office displayed "The Straub

Group," the office was in actuality rented by Principal Financial.

25. Principal Financial also hired and paid for receptionists to answer incoming telephone calls at the Straub Group Office and greet Thomas' customers/prospective customers who visited the Straub Group Office.

26. Principal Financial likewise provided Thomas with e-mail accounts (on Principal Financial's servers) for him and his staff (Debbie Blair and Amanda Flinn). Principal Financial had access to these e-mail accounts at any time if it chose to review the activity therein.

27. Principal Financial has insurance agents located throughout the United States, including multiple offices throughout the State of New Jersey.

28. To purportedly supervise its multiple agents in New Jersey, Principal had different senior management personnel that were 'floaters' that traveled from office to office to purportedly supervise agents such as Thomas.

29. These supervisors would visit offices such as the Straub Group Office and stay for a period of hours or days to oversee the activities therein, meet with the staff, etc.

30. Despite this intended supervision, no actual supervision over Thomas' activities ever occurred. Indeed, Thomas testified in a deposition that he was essentially left alone by Principal Financial and, other than exchanging pleasantries/greetings with the supervisors, no questions were ever asked about his business activities.

31. According to Thomas' deposition testimony, he was "[s]upposed to be supervised, but we weren't."

32. On or about March 31, 2005, Thomas (through his employee Debbie Blair) opened the Suspense Account. At the time, Thomas and/or Debbie explained to Bank of America that the Suspense Account was to be used to hold client/customer monies for investment purposes.


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

33. On the same day, Thomas likewise opened two (2) additional Bank of America accounts – a checking account for The Straub Group (*4895) (the "Straub Group Checking Account") and a checking account to handle payroll for The Straub Group (*7256) (the "Straub Group Payroll Account"). At the time these accounts were opened, Thomas and/or Debbie explained to Bank of America that the Straub Group Checking Account was the main business account for The Straub Group and that the Straub Group Payroll Account was used solely for payment of payroll to The Straub Group's employees.

34. Thomas utilized the Suspense Account to orchestrate a Ponzi scheme that essentially stole more than $15 million from > 50 different persons and entities from, ***at latest***, November 2013 through at least early 2024.

35. Plaintiffs have received bank statements for the Suspense Account dating back only so far as November 2013 (with Bank of America claiming that it does not have earlier statements).

36. The November 2013 statement, however, shows the same Ponzi scheme activity that continued unchecked until early 2024.

37. The Straub Group and Thomas' scheme was both simple and effective.

38. As a senior agent employed by Principal, Thomas preyed upon persons and entities who purchased one or more insurance products from him over the years, with the substantial bulk of those persons and entities being sold Principal Financial insurance products (as Principal Financial paid Thomas a premium over other insurance companies).

39. To the outside world, Thomas appeared to be a legitimate insurance agent with a physical office, employees, back-office support, etc. (all of which was paid for and provided by Principal Financial).

40. Indeed, the substantial bulk of the Plaintiffs purchased one or more life insurance


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

or other insurance products from Principal Financial with Thomas as their agent.

41. Once Thomas had the trust of his customer/client, he would offer an additional 'service' – i.e., the chance to make a "guaranteed" return on extra monies that such customer/client had by depositing such monies in the Suspense Account where they would earn anywhere from 3% - 6% annually and would be used only for a 'great' investment opportunity once discovered by Thomas.

42. Through this scheme, Thomas managed to convince > 50 individuals and entities to deposit > $15 million into the Suspense Account.

43. The bulk of monies received by The Straub Group and/or Thomas were via personal or business checks written to The Straub Group with memo lines that Thomas instructed state 'for deposit into Suspense Account' or a similar iteration identifying the Suspense Account.

44. Over the years, several individuals who deposited monies into the Suspense Account requested to receive monies back from the Suspense Account. Prior to the scheme being revealed in mid-2023, Thomas would generally issue checks to these individuals with memo lines stating 'Return of Invest Proceeds,' "Return of Investment Proceeds,' or a similar iteration.

45. From November 2013 through September 2023, Thomas received hundreds of deposits into the Suspense Account from > 50 different individual and/or entity customers/clients. These deposits totaled > $15 million.

46. During this same time period, Thomas caused > $6 million of the monies in the Suspense Account to be transferred and/or paid to the Straub Group Checking Account, the Straub Group Payroll Account, or multiple personal Bank of America accounts held in Thomas or his wife's name. Thomas also paid significant monies from the Suspense Account to various third parties and essentially drained the Suspense Account of all monies deposited therein.


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

47. The Suspense Account did not actually earn interest on any of Plaintiffs' or other victims' monies. This, however, was the nature of The Straub Group and Thomas' Ponzi scheme – they continued to collect new 'investor' monies and used such to pay out anyone seeking a return of his/her investment (plus interest).

48. Thomas never invested a penny of Plaintiffs' and the other victims' monies – he simply collected new money to pay old investors until such time as his entire scam unraveled.

49. At no time during the 10+ year period that Thomas was running a Ponzi scheme did Bank of America question a single transaction in the Suspense Account or otherwise query why an insurance agent was receiving investment monies and promptly transferring such monies to himself.

50. The Straub Group and Thomas' scheme unquestionably benefited Bank of America as the substantial monies deposited into the Suspense Account (and the substantial amount of which was transferred to The Straub Group and/or Thomas' other accounts) generated significant fees and other income to the bank.

51. Federal law requires banks to "know their customers" and understand their customers' banking behavior. Under applicable regulations, a bank must maintain procedures that allow it to "form a reasonable belief that it knows the true identity of each customer." 31 C.F.R §§ 1020.220(a)(1), (2). Thus, banks are required to collect information about the holder of each account. Where an entity opens an account, the bank must obtain information concerning the individuals who control the account.

52. Customer due diligence requires Bank of America to identify its customers, report indications of suspicious activity and assign a "customer risk rating." Customer due diligence requires Bank of America to know what business the customer is in, and to understand the types


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

of transactions a customer should, and actually does, make. When monitoring its customers' accounts, Bank of America is obligated to comply with the Bank Secrecy Act (BSA), including regulations broadening its anti-money laundering provisions. The BSA requires Bank of America to develop, administer and maintain a program to ensure compliance. The program must be approved by the bank's board of directors and noted in the board meeting minutes. It must (1) provide for a system of internal controls to ensure ongoing BSA compliance, (2) provide for independent testing of the bank's compliance, (3) designate an individual to coordinate and monitor compliance and (4) provide training for appropriate personnel.

53. Bank of America must also maintain a customer due diligence program to predict the types of transactions, dollar volume and transaction volume each customer is likely to conduct, thereby providing the bank with a means of identifying unusual or suspicious transactions for each customer. The customer due diligence program allows the bank to maintain awareness of the financial activity of its customers and the ability to predict the type and frequency of transactions in which its customers are likely to engage.

54. Customer due diligence programs should be tailored to the risk presented by individual customers, such that the higher the risk presented, the more attention is paid. Where a customer is determined to be high risk, banks should gather additional information about the customer and accounts, including determining: (1) purpose of the account; (2) source of funds; (3) proximity of customer's residence to the bank; and (4) explanations for changes in account activity.

55. Bank of America and its personnel must be able to identify and take appropriate action once put on notice of any of a series of money laundering indicia set forth in the Federal Financial Institutions Examination Council's BSA/AML Examination Manual. These include: (1) repetitive or unusual fund transfer activity; (2) fund transfers sent or received from the same person


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

to or from different accounts; (3) transactions inconsistent with the account holder's business; (4) transfers of funds among related accounts; (5) depositing of funds into several accounts that are later consolidated into a single master account; (6) large fund transfers sent in round-dollar amounts; (7) payments unconnected to legitimate contracts or revenue sources; (8) fund transfers containing limited content or related party information; and, (9) an unusually large number of persons or entities receiving fund transfers from one company.

56. Here, Bank of America engaged in a Know Your Customer analysis of The Straub Group and/or Thomas and monitored their accounts for anomalous or suspicious behavior. Bank of America collected and reviewed information about The Straub Group and/or Thomas' business operations, the source of their funds, and the purpose of their accounts.

57. Bank of America understood The Straub Group and/or Thomas' claimed business model and should have seen banking activity consistent with this business model. But that was not what Bank of America saw. Instead, it saw a great deal of investor money entering the Suspense Account—and an array of other banking activities blatantly at odds with The Straub Group and/or Thomas' claimed business model.

58. Here, Bank of America knew or willfully ignored that The Straub Group and/or Thomas was raising considerable investor funds from multiple small investors, that neither was properly registered to sell securities or qualify for any exemption for the sale of securities, and that The Straub Group and/or Thomas were paying to themselves millions of dollars from an account that was supposed to be used exclusively to hold investor monies.

59. The Straub Group and Thomas' Ponzi scheme likely would have continued unchecked but for the efforts of Hippocrates who began to unravel the scheme in April/May 2023.

60. After several months of demanding a return of its investment monies and/or proof


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

that such monies remained in the Suspense Account, Hippocrates ultimately filed a lawsuit against The Straub Group and Thomas in the Southern District of Florida (Case No. 9:23-cv-81309) (the "Hippocrates/Straub Lawsuit").

61. That lawsuit, which was filed on September 22, 2023, ultimately resulted in a final judgment being entered against The Straub Group and Thomas in the amount of $21,193,037.97.

62. During the Hippocrates/Straub Lawsuit, Hippocrates subpoenaed Bank of America (on October 20, 2023 and January 3, 2024) for records pertaining to the Suspense Account, the Straub Group Checking Account, the Straub Group Payroll Account, and Thomas' various personal bank accounts.

63. Even with these subpoenas, Bank of America took no action to investigate the use of the Suspense Account or otherwise close that account. Incredibly, this allowed The Straub Group and Thomas to solicit and deposit at least an additional $199,000.00 in investor monies into the Suspense Account from October 1, 2023 – December 31, 2023 (and likely more monies after this date).

64. During the Hippocrates/Straub Lawsuit, Hippocrates likewise subpoenaed Principal Financial (on January 8, 2024) for records pertaining to insurance policies sold by Thomas.

65. As with Bank of America, Principal Financial failed to take any action upon receipt of this subpoena to investigate the issues in this lawsuit. Rather, Principal Financial allowed Thomas for at least 3 – 4 additional months to continue his Ponzi scheme and serve as an insurance producer with respect to several new Principal Financial policies.

66. But for Bank of America and Principal Financial's deliberate ignorance and failure to investigate, the Straub Group and Thomas would not have managed to steal at least $15 million

for more than a decade from > 50 investors. Indeed, had Hippocrates not revealed the Ponzi scheme for what it was, The Straub Group and Thomas would likely still be utilizing their Principal Financial agent status to solicit millions of dollars of new investor monies and their Bank of America accounts as the personal piggy bank to launder that money to themselves.

67. All conditions precedent to the filing of this action have been performed, occurred, or been waived.

**COUNT ONE: AIDING AND ABETTING FRAUD**
**(Plaintiffs v. Principal Financial)**

68. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.

69. As set forth above, Thomas and The Straub Group perpetrated a fraud upon Plaintiffs by earning their trust through his appearance as a legitimate insurance agent with a physical office, employees, back-office support, etc., provided and maintained by Principal Financial. Thomas and The Straub Group misrepresented to Plaintiffs that the Suspense Account would be used to 'park' their money in a guaranteed account whereby such monies would earn "guaranteed" rates of interest until a long-term investment was identified.

70. Plaintiffs reasonably relied to their detriment upon those misrepresentations when they invested with The Straub Group.

71. Despite the initiation of the Hippocrates/Straub Lawsuit, Principal Financial continued to provide support to The Straub Group and Thomas and maintain Thomas' title as an insurance producer for several months, fueling the façade of legitimacy Thomas and The Straub Group needed to continue their Ponzi scheme

72. As set forth above, Principal Financial substantially assisted The Straub Group and Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

years without such substantial assistance.

73. Principal Financial substantially benefited from its participation in the scheme, earning substantial fees and other monies generated from The Straub Group and Thomas' inducing victims into opening life insurance and other policies with Principal Financial.

74. As a direct and proximate result of Principal Financial's aiding and abetting fraud, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand judgment against Principal Financial for compensatory damages, consequential damages, preliminary and permanent injunctive relief, prejudgment interest, and such other relief as the Court deems just and proper.

**COUNT TWO: AIDING AND ABETTING FRAUD**
**(Plaintiffs v. Bank of America)**

75. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.

76. As set forth above, Thomas and The Straub Group perpetrated a fraud upon Plaintiffs by earning their trust through his appearance as a legitimate insurance agent with a physical office, employees, back-office support, etc.

77. Thomas and The Straub Group misrepresented to Plaintiffs that the Suspense Account would be used to 'park' their money in a guaranteed account whereby such monies would earn "guaranteed" rates of interest until a long-term investment was identified.

78. Thomas and the Straub Group made substantial and repeated deposits of investor money into the Suspense Account. Despite these banking activities being blatantly at odds with The Straub Group and/or Thomas' claimed business model, Bank of America did not make any


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

further inquiries. Rather, Bank of America simply looked the other way.

79. Plaintiffs reasonably relied to their detriment upon those misrepresentations when they invested with The Straub Group.

80. As set forth above, Bank of America substantially assisted The Straub Group and Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+ years without such substantial assistance.

81. Bank of America substantially benefited from its participation in the scheme, earning substantial fees and other monies generated from The Straub Group and Thomas' deposit of > $15 million into the Suspense Account over a 10+ year period of time.

82. As a direct and proximate result of Bank of America aiding and abetting the fraud, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand judgment against Bank of America for compensatory damages, consequential damages, preliminary and permanent injunctive relief, prejudgment interest, and such other relief as the Court deems just and proper.

**COUNT THREE: AIDING AND ABETTING CONVERSION**
**(Plaintiffs v. Principal Financial)**

83. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.

84. As set forth above, The Straub Group and Thomas are in wrongful possession of specifically-identifiable funds belonging to each of the Plaintiffs that were purportedly in short-term 'suspense' accounts being managed by The Straub Group and Straub for Plaintiffs' benefit.

85. The Straub Group and Thomas wrongfully asserted dominion or control over Plaintiffs' property and rights in a manner inconsistent with Plaintiffs' ownership and entitlement


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

thereto.

86. As set forth above, Principal Financial substantially assisted The Straub Group and Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+ years without such substantial assistance.

87. Principal Financial substantially benefited from its participation in the scheme, earning substantial fees and other monies generated from The Straub Group and Thomas' inducing victims into opening life insurance and other policies with Principal Financial.

88. As a direct and proximate result of Principal Financial's aiding and abetting conversion, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand judgment against Principal Financial for compensatory damages, consequential damages, preliminary and permanent injunctive relief, prejudgment interest, and such other relief as the Court deems just and proper.

**COUNT FOUR: AIDING AND ABETTING CONVERSION**
**(Plaintiffs v. Bank of America)**

89. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.

90. As set forth above, The Straub Group and Thomas are in wrongful possession of specifically-identifiable funds belonging to each of the Plaintiffs that were purportedly in short-term 'suspense' accounts being managed by The Straub Group and Straub for Plaintiffs' benefit.

91. The Straub Group and Thomas wrongfully asserted dominion or control over Plaintiffs' property and rights in a manner inconsistent with Plaintiffs' ownership and entitlement thereto.

92. As set forth above, Bank of America substantially assisted The Straub Group and


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+ years without such substantial assistance.

93. Bank of America substantially benefited from its participation in the scheme, earning substantial fees and other monies generated from The Straub Group and Thomas' deposit of > $15 million into the Suspense Account over a 10+ year period of time.

94. As a direct and proximate result of Bank of America's aiding and abetting conversion, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand judgment against Bank of America for compensatory damages, consequential damages, preliminary and permanent injunctive relief, prejudgment interest, and such other relief as the Court deems just and proper.

**COUNT FIVE: AIDING AND ABETTING CIVIL THEFT**
**(Plaintiffs v. Principal Financial)**

95. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.

96. As set forth above, The Straub Group and Thomas are in wrongful possession of specifically-identifiable funds belonging to each of the Plaintiffs that were purportedly in short-term 'suspense' accounts being managed by The Straub Group and Straub for Plaintiffs' benefit.

97. The Straub Group and Thomas' actions constitute civil theft pursuant to Fla. Stat. § 772.11 by virtue of their violation of Fla. Stat. § 812.014 (theft).

98. As set forth above, Principal Financial substantially assisted The Straub Group and Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+ years without such substantial assistance.

99. Principal Financial substantially benefited from its participation in the scheme,


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

earning substantial fees and other monies generated from The Straub Group and Thomas' inducing victims into opening life insurance and other policies with Principal Financial.

100. As a direct and proximate result of Principal Financial's aiding and abetting civil theft, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Principal Financial for compensatory, consequential, special, and treble damages, prejudgment interest, post-judgment interest, costs, reasonable attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT SIX: AIDING AND ABETTING CIVIL THEFT**
**(Plaintiffs v. Bank of America)**

101. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.

102. As set forth above, The Straub Group and Thomas are in wrongful possession of specifically-identifiable funds belonging to each of the Plaintiffs that were purportedly in short-term 'suspense' accounts being managed by The Straub Group and Straub for Plaintiffs' benefit.

103. The Straub Group and Thomas' actions constitute civil theft pursuant to Fla. Stat. § 772.11 by virtue of their violation of Fla. Stat. § 812.014 (theft).

104. As set forth above, Bank of America substantially assisted The Straub Group and Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+ years without such substantial assistance.

105. Bank of America substantially benefited from its participation in the scheme, earning substantial fees and other monies generated from The Straub Group and Thomas' deposit of > $15 million into the Suspense Account over a 10+ year period of time.

106. As a direct and proximate result of Bank of America's aiding and abetting civil


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

theft, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Bank of America for compensatory, consequential, special, and treble damages, prejudgment interest, post-judgment interest, costs, reasonable attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT SEVEN: AIDING AND ABETTING UNJUST ENRICHMENT**
**(Plaintiffs v. Principal Financial)**

107. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.

108. Plaintiffs provided a direct benefit to The Straub Group and Thomas by placing millions of dollars of Plaintiffs' assets under The Straub Group and Thomas' care/management.

109. The Straub Group and Thomas unjustly enriched themselves by retaining Plaintiffs' monies and failing to tender such monies to Plaintiffs upon demand.

110. As set forth above, Principal Financial substantially assisted The Straub Group and Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+ years without such substantial assistance.

111. Principal Financial substantially benefited from its participation in the scheme, earning substantial fees and other monies generated from The Straub Group and Thomas' inducing victims into opening life insurance and other policies with Principal Financial.

112. As a direct and proximate result of Principal Financial's aiding and abetting unjust enrichment, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Principal Financial for compensatory damages, consequential damages, prejudgment interest, post-judgment interest, costs, and such


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

other relief as the Court deems just and proper.

**COUNT EIGHT: AIDING AND ABETTING UNJUST ENRICHMENT**
**(Plaintiffs v. Bank of America)**

113. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.

114. Plaintiffs provided a direct benefit to The Straub Group and Thomas by placing millions of dollars of Plaintiffs' assets under The Straub Group and Thomas' care/management.

115. The Straub Group and Thomas unjustly enriched themselves by retaining Plaintiffs' monies and failing to tender such monies to Plaintiffs upon demand.

116. As set forth above, Bank of America substantially assisted The Straub Group and Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+ years without such substantial assistance.

117. Bank of America substantially benefited from its participation in the scheme, earning substantial fees and other monies generated from The Straub Group and Thomas' deposit of > $15 million into the Suspense Account over a 10+ year period of time.

118. As a direct and proximate result of Bank of America's aiding and abetting unjust enrichment, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Bank of America for compensatory damages, consequential damages, prejudgment interest, post-judgment interest, costs, and such other relief as the Court deems just and proper.

**COUNT NINE: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(Principal Financial)**

119. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

forth herein.

120. Plaintiffs entrusted The Straub Group and Thomas, acting as financial, insurance, and/or investment advisors, with tens of millions of dollars of Plaintiffs' monies.

121. Given this relationship of trust, The Straub Group and Thomas owed a fiduciary duty of loyalty and due care to Plaintiffs.

122. The Straub Group and Thomas breached their fiduciary duty by, among other things, refusing to account to Plaintiffs for Plaintiffs' monies and converting such monies for their own use.

123. As set forth above, Principal Financial substantially assisted The Straub Group and Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+ years without such substantial assistance.

124. Principal Financial substantially benefited from its participation in the scheme, earning substantial fees and other monies generated from The Straub Group and Thomas' inducing victims into opening life insurance and other policies with Principal Financial.

125. As a direct and proximate result of Principal Financial's aiding and abetting breach of fiduciary duty, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Principal FInancial for compensatory damages, consequential damages, prejudgment interest, post-judgment interest, costs, and such other relief as the Court deems just and proper.

**COUNT TEN: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(Bank of America)**

126. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

127. Plaintiffs entrusted The Straub Group and Thomas, acting as financial, insurance, and/or investment advisors, with tens of millions of dollars of Plaintiffs' monies.

128. Given this relationship of trust, The Straub Group and Thomas owed a fiduciary duty of loyalty and due care to Plaintiffs.

129. The Straub Group and Thomas breached their fiduciary duty by, among other things, refusing to account to Plaintiffs for Plaintiffs' monies and converting such monies for their own use.

130. As set forth above, Bank of America substantially assisted The Straub Group and Thomas in their Ponzi scheme – indeed, the scheme could not have continued successfully for 10+ years without such substantial assistance.

131. Bank of America substantially benefited from its participation in the scheme, earning substantial fees and other monies generated from The Straub Group and Thomas' deposit of > $15 million into the Suspense Account over a 10+ year period of time.

132. As a direct and proximate result of Bank of America's aiding and abetting breach of fiduciary duty, Plaintiffs and other victims have sustained substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Bank of America for compensatory damages, consequential damages, prejudgment interest, post-judgment interest, costs, and such other relief as the Court deems just and proper.

**COUNT ELEVEN: UNJUST ENRICHMENT**
**(Bank of America)**

133. Plaintiffs re-allege and incorporate paragraphs 1 through 67 above as if fully set forth herein.

134. Bank of America provided banking services to Thomas and The Straub Group


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

through various bank accounts. Those bank accounts were used to carry out the Ponzi scheme described herein.

135. Bank of America provided banking services in support of the scheme. Bank of America received the fees from Thomas and The Straub Group in connection with and in furtherance of that scheme.

136. The fund held in The Straub Group accounts belonged to investors. Thus, Plaintiffs and class members conferred benefits upon Bank of America in the form of transfer fees, service fees, transaction fees and online banking fees. Bank of America knowingly and voluntarily accepted, and retained, those benefits.

137. For the reasons described above, it would be inequitable for Bank of America to retain those benefits, including profits derived from those benefits.

**WHEREFORE,** Plaintiffs, on behalf of themselves, respectfully demand judgment against Bank of America for the return of the fees retained by Bank of America; pre- and post-judgment interest; and/or such other and further relief as the Court deems just and proper.

**Demand For Jury Trial**

Plaintiffs demand a trial by jury on all issued so triable.

Dated: August 16, 2024.

DESOUZA LAW, P.A.
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (954) 603-1340
DDesouza@desouzalaw.com

By: /s/ Daniel DeSouza, Esq.______
Daniel DeSouza, Esq.
Florida Bar No.: 19291

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza___
Daniel DeSouza


DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340